KEENE, Plaintiff in Error, v. BARNES, Defendant in Error.

1. Under the act of Congress of March 2, 1821, (3 U. S. Statutes at Large, p. 612,) purchasers of the public lands who had not paid the whole purchase money might relinquish their purchases and others might be substituted in their places and might complete the purchases.
2. A sale, by the marshal of the United States, at the court-house in St. Louis, under a judgment of the United States district court, of lands situate in Boone county, is, it seems, valid.
3. A sheriff acting under the act of the general assembly of February 27, 1843, (Sess. Acts, 1843, p. 137,) sold thirteen several tracts assessed in the names of different persons for the taxes of the year 1842. They were sold in the lump and for the aggregate taxes of that year, the taxes due on each tract separately not being stated. *Held*, that the sale and the deed made in pursuance thereof were void.

4. A county collector making sale of land for taxes under the act of February 13, 1847, (Sess. Acts, 1847, p. 119, § 10,) was bound to make his sales before the door of the court-house of the county ; so also he was required to set up at the court-house door a copy of the advertisement by the register of lands of all the unredeemed lands of the state for sale, also to set up at the most public places in the county the twenty slips received from the register setting forth the lands and lots advertised in each county. If these requisites were not complied with, the sale by the collector would be invalid.

5. Where an action of ejectment is brought against several, and it appears that their possession is not joint, but several and adverse, of separate portions of the tract claimed, the plaintiff may be required to elect against which of the defendants he will proceed to take judgment.

### Error to Boone Circuit Court.

This was an action in the nature of an action of ejectment against Tarlton Barnes, Philip Barnes and Samuel Ashlock, to recover possession of the south-west quarter of section fifteen, township forty-seven, range eleven. The defendants denied joint possession, and asserted several and adverse occupancy. The plaintiff, in support of his title, introduced transcripts of entries at the land office. These entries showed that one Burckhart had first entered the quarter section in controversy in 1818 and had paid part of the purchase money. Plaintiff also introduced a final certificate of entry issued in 1821, to Angus L. Langham. No conveyance by Burckhart to Langham was shown. Plaintiff then introduced a certified copy of a judgment rendered in the year 1823 in the district court of the United States for Missouri, against said Langham. An execution issued upon this judgment and under it the marshal of the United States levied upon the land in controversy, together with many other tracts situate in different counties of the state. The marshal made his sale under this levy at the door of the court-house of St. Louis county. Jesse G. Lindell became the purchaser of the tract in controversy at this sale and received the marshal's deed therefor, dated March 12, 1825. Lindell, in the year 1855, conveyed the same to plaintiff. It also appeared that Philip Barnes, one of the defendants, was in the separate and exclusive possession of twenty acres of the land in con-

troversy; that Ashlock was in possession of twenty-five acres; that Tarlton Barnes was in possession of the residue; that the defendants made no joint entry. The court here compelled the plaintiff, on motion of defendants, to elect which of the defendants he would proceed against. He elected to proceed against Tarlton Barnes and the suit was dismissed as to the others.

The defendant introduced, against the objection of plaintiff, a deed dated March 30, 1855, executed by the register of lands of the state of Missouri. By this deed a portion, one hundred and forty acres, of the land in suit was conveyed to John H. Hickam. This deed was based upon a sale by Douglass, the sheriff of Boone county, for the taxes of said land for the year 1851. Hickam conveyed the land by deed dated September 5, 1857, to the defendant Tarlton Barnes. The defendant also introduced, against the objection of plaintiff, a deed, dated September 3, 1844, from F. A. Hamilton, then sheriff of Boone county. By this deed the land in suit, together with twelve other tracts, were conveyed to one F. T. Russell. The sheriff made this deed in pursuance of a sale by him of said tracts for the taxes of the year 1842. The tracts, as appeared from the deed, were assessed to different persons; they were sold in the lump, and for an aggregate amount of taxes, the amount of taxes due upon each separate tract not appearing.

The plaintiff, in rebuttal, after reading extracts from the advertisements sent out by the register of lands, showing the manner in which the land in controversy was described, and extracts from the assessor's books, introduced Joseph B. Douglass, former sheriff of Boone county, as a witness. He testified that he did not himself give notice of the sale of lands for the nonpayment of the taxes of the year 1851 by setting up twenty slips of advertisements at the most public places in the different townships in Boone county; that he supposed this was done by his deputies; that he was in the habit of sending out the twenty slips required to be set up in the different townships by his deputies, and by other persons;

that he set up one of said slips on a column at the court-house; that he did not put up at the court-house one of the four general advertisements sent him by the register containing a list of all the lands advertised for sale in the state for the nonpayment of taxes for the year aforesaid; that he kept said general list in his office subject to the inspection of any one who desired to look at it; that in the sales of lands made by him for the nonpayment of taxes he did not sell them before the court-house door, but in his office; that he recollects the sale of the land in controversy; that he sold said land in his office whilst sitting at his table; that it was bought by John Hickam for the sum of two dollars and fifteen cents, he being the best bidder; that he was in the habit of continuing the sales of land from day to day until all were sold; that the lands were not sold regularly, one tract after another, but that any one coming into his office and naming a tract advertised for sale that he desired to purchase, the same was immediately put up and sold to him who would take the smallest portion thereof and pay the taxes, penalties and costs thereon; that whilst he was sheriff of Boone county he kept the office of sheriff in a room in the court-house, at the front end of the building; that the door of the office opened into a hall eight or ten feet distant from the court-house door; that he could not say whether when he sold the land in controversy the door of the office was shut or open; that he was not in the habit of making public proclamation of the sale of land for taxes, nor did he do so at the time the tract in controversy was sold; that from time to time, when sales of lands were about to take place, he would cause the court-house bell to be rung.

The plaintiff moved the court to declare the law as follows: "1. The register's deed to Hickam, not having his private seal attached thereto, passed no title to Hickam. 2. In order to constitute a valid sale of the land in controversy the law regulating the sale of land for taxes must have been strictly complied with, and if there was an omission of any of the prerequisites to authorize a deed to be made, then

said sale is void and passes no title to the purchaser. 3. The land in controversy not having been properly described by its assessment for the year ——, as required by law, the sale made of said land for the nonpayment of the taxes for said year is invalid and void. 4. If the land in controversy was not legally described in the list required to be certified to the register of lands, or in the advertisement thereof by the register of lands, or in the deed of conveyance under which said defendant claims, by its township, range, section, fractional part of section, or other legal subdivision thereof, then they will find for the plaintiff as to the one hundred and fifteen acres claimed by the defendant Tarlton Barnes. 5. If the collector failed to set up twenty slips, setting forth the lands and town lots advertised for sale in his county and forwarded to him by the register, at the most public places in the several municipal townships of the county, then they will find for the plaintiff as to the one hundred and fifteen acres claimed by defendant Tarlton Barnes. 6. If the collector failed to put up at the court-house door a copy of the general advertisement of all the lands advertised for sale for nonpayment of taxes transmitted to him by the register, then the sale of the land in controversy by the collector was invalid and passed no title to the purchaser. 7. Unless the land in controversy was sold by the collector publicly before the court-house door as required by law, his deed is void and passes no title to the purchaser. 8. The deed from the sheriff Hamilton to Russell showing upon its face that all the lands conveyed therein were sold in a lump and in not otherwise complying with the requirements of the law, the same was void, and passed no title to the purchaser." Of these the court gave those numbered two, five and seven, and refused the others.

The defendant moved the court to declare the law as follows: " 1. It devolves on the plaintiff to prove title in himself to the land in controversy. 2. The land in controversy having been originally entered by Burckhart, it devolved on the plaintiff to prove a regular chain of title from said Burck-

hart by deeds of conveyance, and no deed having been shown from Burckhart, the plaintiff is not entitled to recover. 3. The marshal's sale and deed to Lindell did not pass the title to the land in controversy to said Lindell. 4. The register's deed to Hickam is *prima facie* evidence of title in fee simple in said Hickam to the land in controversy, and the defendant's deed from Hickam for said land vested Hickam's title in the defendant. 5. If the court finds that the defendant was in possession of the land, claiming title under a deed from Hickam, then the defendant had a right to protect himself by an outstanding title, and for this purpose the sheriff's deed to Russell is *prima facie* evidence of title in fee in said Russell as against said plaintiff." Of these the court gave those numbered one, four and five, and refused those numbered two and three.

The court found for the defendant.

*Guitar, Gordon & Rollins,* for plaintiff in error.

I. The rule prescribed by our statute making the register's deed *prima facie* evidence of title in fee simple in a purchaser at a tax sale, and devolving the onus of proof upon the parties claiming adversely to such deed, is a wide departure from the well settled principles of the common law, and in direct opposition to the rule requiring " that all essential links in every chain of title, whether they are evidenced by records or deeds, or rest merely in parol, must be affirmatively proved by the party who sets up the title." No title passed by the sale and conveyance to Hickam. The twenty slips, required by the statute, of the advertisement under which the land was sold, were not set up by the collector. (See Sess. Acts, 1847, p. 118, § 5.) Douglass' evidence is ample to negative the fact that the twenty slips were set up. Plenary evidence is not required in proving a negative averment. (Blackwell on Tax Titles, 603.) The collector did not set up at the court-house door as required by the statute one of the four general advertisements comprising all the delinquent lands for the year 1851. (Sess. Acts, 1847, p.

118, § 5.) The land in question was not publicly exposed to sale by the collector before the court-house door, but was sold privately at his table in his office. (Sess. Acts, 1847, p. 119, § 10; Blackwell on Tax Titles, 312, 322.) The description of the land contained in the advertisement, as also in the deed to Hickam, is vague and uncertain. It is insufficient to enable a surveyor to locate it, to authorize the sale or pass the title under it. (Blackwell on Tax Titles, 267, 268.) The court erred in permitting the deed from the sheriff Hamilton to Russell to be read in evidence. No title passed under that deed. The act of 1843, under which this sale was made, required that only " so much of each tract of land or town lot should be sold as would pay the taxes, interest and costs due upon the same. (Sess. Acts, 1843, p. 138, § 2.) This question is fully settled in the case of the State v. Richardson, 21 Mo. 420.) The sale in that case was made under the act of 1847. The court erred in refusing to give instructions numbered one, three, four, six and eight, asked for by the plaintiff, for the reasons already stated. The marshal's sale under which Lindell purchased was valid and passed the title to Lindell. (Kennerly et al. v. Shepley, 15 Mo. 640.)

*J. M. Gordon*, for defendant in error.

I. It devolved on the plaintiff to prove title in himself to the land in controversy. The land having been originally entered by Burckhart, it devolved on the defendant to prove a regular chain of title from said Burckhart by deed of conveyance to entitle him to recover the land. The sale of the land by the marshal to Lindell passed no title to the land. The sale was made in St. Louis and the land is situated in Boone county, and was not properly described in the notice of sale. The register's deed to Hickam is *prima facie* evidence of title in fee simple in Hickam to the land, and Hickam's deed to the defendant Tarlton Barnes vested Hickam's title in the defendant. The defendant Tarlton Barnes was in possession of the land, claimed title thereto under a deed

from Hickam, and had the right to protect himself by an out-standing title ; and for this purpose the deed from Hamilton to Russell is *prima facie* evidence of title in fee in Russell against the plaintiff. The deed from Hamilton to Russell is a valid deed and passed the title to the land to Russell. There is nothing in this deed showing that the several tracts of land embraced in the deed were sold in a lump, and the court can not say that the several tracts mentioned in the deed were sold in a lump, from any thing which appears in this cause. There was no joint entry or joint possession by the defendant of any part of the land. The court, therefore, properly required the plaintiff to elect as to which of the defendants he would proceed against and to dismiss his suit as to the other two defendants.

SCOTT, Judge, delivered the opinion of the court.

There was no specific objections made to the instruments by which the plaintiff's title was shown. Objections to legal instruments as evidence must be specific and made in the court below, as they can not be noticed here for the first time. The act of March 2, 1821, authorized the purchasers of public lands to relinquish their purchases, and although Christopher Burckhart was the original purchaser of the tract in controversy, yet the record shows that Angus L. Langham received the final certificate of entry as the assignee of Burckhart. The plaintiff claims through Langham, and there was no specific objection to the deed of the United States marshal conveying Langham's interest to Lindell, from whom the plaintiff claimed. We see no objections to the proceedings of the marshal, and it is not our business to see them unless they are first pointed out and determined in the inferior court. Sales conducted in the manner of that now under consideration have received the sanction of this court. (Kennerly v. Shepley, 15 Mo. 640.)

As one of his defences, the defendant relied on a sheriff's deed for taxes as an outstanding title. This deed was made on the 3d day of September, 1844, to Francis T. Russell for

the taxes due on the land for the year 1842. It appears that the deed contained thirteen tracts or parcels of land, which were assessed in the names of different persons; and it did not appear but they were owned by different individuals. The aggregate amount of the taxes due on all the tracts is only stated. It is obvious that this deed can not be sustained. If even all the lands belonged to one person, such a sale would be oppressive. The owner might be willing to redeem a portion of the tracts, which he could not do; as the transaction stood as a single sale, the owner would be obliged to redeem all or none. How much would the confusion of the transaction be aggravated, if the lands were owned by different persons? We do not hold that a purchaser must take a separate deed for each tract purchased by him at a sale, but he must take a deed so worded as not to embarrass the owner's right of redemption or clog it with conditions not imposed by law.

The defendant also claimed under a register's deed dated 30th of March, 1855, on a sale made by the collector of Boone county, on the first Monday of October, 1852, for the taxes of the year 1851 due on the said land. John Hickam became the purchaser at the sale, and conveyed to the defendant. Some of the objections to this deed are founded on extrinsic evidence. Can not the parties see how this court is embarrassed in revising cases like this, when they have been tried without a jury? A party produces evidence in support of a certain hypothesis; the evidence is received, and instructions are based upon it favorable to the party offering it; and notwithstanding they are given, a verdict is found against him. Under these circumstances it is impossible for this court to ascertain the ground of the action of the infe-rior court. If the plaintiff would waive his jury trial, why did he not set forth the circumstances in which an instruction under which the collector made the sale and call upon the court to declare whether a sale in his office was a compliance with the law? As the case now stands, the instruction, to the effect that the sale must be before the court-

house door, is undoubtedly correct, for it is a statutory requirement; but how does it throw any light on the case, and how are we embarrassed in reviewing the instructions of this case if we can believe that the court placed any confidence in the truth of the collector's statement? If the printed advertisement of the list of all the taxable lands in the state was not put up as the act of 1847 required, how can the sale be supported? So of the twenty slips required by law to be put up. The evidence, however, in regard to these may not have been sufficient to satisfy the mind that they were not put up.

As to the description of the land, we do not feel willing to give any opinion as to its sufficiency. It does not appear how the tract was reduced to one hundred and forty acres. If the plaintiff had no more than was sold, or more than was sold, let the fact appear. All the facts in relation to this matter should be set forth so as to form an opinion upon it.

As to the compelling of the plaintiff to elect against which of the defendants he would proceed, it will be observed that the defendants set up in their answer the defence that they held portions of the premises in severalty, and denied the joint occupancy. If so, they could not be jointly sued. But the facts of the answer must be proved; and when they were found true, then the question would arise against which of the defendants the plaintiff would take judgment. (Jackson v. Hagen, 2 Johns. 441; Fosgate v. The Herkimer Manufacturing Co. 2 Kernan, 580; Vorhies N. Y. Prac. 598.)

Judgment reversed and remanded; the other judges concurring.