LEVIN H. BAKER, *et al.*, Plaintiffs in Error, *vs.* JOSEPH UNDER-
WOOD, Defendant in Error.

1. *Conveyance by United States marshal in* 1825—*Acknowledgment—Record—*
*Execution—Direction to levy on chattels or lands, etc.*—Where land was sold
and deed given by the United States marshal, in 1825, it was held, 1st, that
by analogy with the then statutes of Missouri, his deed was properly acknowl-
edged before the district court, of which he was an officer, and to which he was
required to make his return, and that the clerk of the court was not required
to certify that the marshal was personally known to him, and that under the
statute of 1825 (R. C. 1825, p. 221, § 14) such deed was entitled to record;
2d, that a sale by the marshal at the door of the court house at which the dis-
trict court was held, and during a session of the court, was sufficient, al-
though the land lay elsewhere; 3d, that, although the execution, if it author-
ized him to levy on chattels and lands indiscriminately, was irregular and might
at the proper time have been quashed, yet, as the officer will be presumed to
have done his duty, and to have exhausted the personalty, before selling the
land, sale thereof under such execution would—certainly after a lapse of fifty
years—be sufficient to furnish the basis of title.

*Error to Carroll County Circuit Court.*

*Jno. L. Mirick*, for Plaintiffs in Error, cited Kennerly vs.
Shepley, 15 Mo. 640 ; Keene vs. Barnes, 29 Mo. 337 ; 1 Greenl.
Ev. p. 89 ; Laughlin vs. Stone, 5 Mo. 45.

*Hale & Eads, with L. H. Waters*, for Defendant in Error.

I. By analogy to State law regulating acknowledgments of sher-
iffs' deeds, the marshal's deed should have been acknowledged before
the circuit court of the county in which the real estate was situ-
ated. (R. C. 1825, p. 369, § 21.) If it should be held that
the acknowledgment is regulated by the general law in regard to
conveyances, then the certificate should state that the person ac-
knowledging the deed was personally known to the court or officer
taking the acknowledgment. (R. C. 1825, p. 218, § 10.)

II. The executions under which said real estate was sold by
said marshal, were illegal and unauthorized. They were general
executions against the goods, chattels, lands and tenements of
William Stokes.

NAPTON, Judge, delivered the opinion of the court.

This is an action of ejectment to recover the northwest quarter of the southeast quarter of section 22, T. 50, R. 21.

The titles of the plaintiff and defendant were based on the conceded title of Wm. Stokes in 1822, by patents from the United States. The land was military bounty land.

The plaintiffs, who are heirs of Peter Lindell, claim the land by virtue of a sale by the United States marshal for the district of Missouri, under a judgment of the district court against John O'Fallon, executor of Stokes, and an execution and a deed from said marshal in 1825.

The defendants claim under a regular chain of title from Ann Carson, only daughter and heir of Wm. Stokes, originating in 1846.

Consequently, the only question in the case was, whether the marshal's deed in 1825, or rather, the record of it, was properly admitted in evidence as against the defendants, who were conceded to be *bonà fide* purchasers for value, and without any other notice than the records imported.

This deed and the executions referred to in it, and the advertisement for sale, are recorded in the records of the United States district court.

The acknowledgment of the deed was on the 8th of September, 1825. The records of that date state that Henry Dodge, United States marshal, personally appeared in the district court, and acknowledged the execution of the deed from him as marshal, to Peter Lindell. The records of Ray county show that the deed was filed for record in that county, and duly recorded in 1828.

The clerk of the Carroll county court certifies that this record is duly recorded in the office of the recorder of deeds, and taken from the Ray county records. It was conceded that the land in dispute was in 1825 in Ray county, now in Carroll county.

The deed from Dodge, marshal, recites two writs of execution, returnable to the September Term of the district court in 1825, copies of which are annexed to the deed (as recited in it), and

25—VOL. LXIII.

made a part and parcel of it; and further states that he levied on and seized "all the right, title and claim, interest, estate and property of him, the said William Stokes, deceased," to certain lands, including this now in dispute, and advertised as the law directs (stating the particulars), which advertisement is also made a part of the deed; and in pursuance of said execution and advertisement, he did, on the 7th of September, 1825, at the court house door, in the city of St. Louis, during the sitting of the district court, sell the land, or rather, all the right, title and interest of Wm. Stokes, or that appertaining to his estate, in the land advertised, to Peter Lindell, the highest bidder. He therefore transfers and assigns to Peter Lindell, etc., this interest. This deed is signed and sealed, 9th of September, 1825.

The executions command the marshal, that of the goods and chattels, lands and tenements of the said Wm. Stokes, deceased, at the time of his death in the hands of his executor, to be administered, he cause to be made the damages and costs recited in the judgments.

The advertisement recites, that by virtue of two executions issuing from the district court of Missouri, the marshal would sell at the court house door to the highest bidder, on the 7th day of September, between the hours of 9 and 5, all the right, title and interest of Stokes in certain lands, of which the land, now in dispute, was a part, etc. The record of the district court recites, that on the 8th of September, 1825, Henry Dodge, marshal of said district, personally appeared in the district court and acknowledged the execution of this deed. The records of Ray county show that this deed was recorded there on the 18th of September, 1828. The certificate of the recorder of Carroll county (taken from Ray county) is produced, and also of the now clerk of the district court of the United States.

The judgment roll of the district court is then produced, showing the proceedings and final judgment in the cases on which executions against O'Fallon, executor of Stokes, issued.

The title of the defendant depended on a deed from the daughter and heir of Stokes in 1845, which is conceded to have been for value and properly executed and recorded. So that the only

question in the case is as to the admission of the marshal's deed in 1825, and its effect as giving notice-to the purchaser from the heirs of Stokes, in 1845.

It will be perceived by an examination of the cases of Kennerly vs. Shepley (15 Mo. 640), and Keene vs. Barnes (29 Mo. 377), that the value of such deeds was somewhat discussed, but that the precise question presented here was not determined. In the former case the deed was lost and had never been recorded, and the controversy was between the creditors of Kennerly, represented by the administratrix of Kennerly, and the grantee in the marshal's deed. In the last case, the objections to the marshal's deed were not specified, and the court refused to decide on them. The date of the marshal's deed in the case of Shepley vs. Kennerly was, however, the same as the present, and it was undoubtedly the opinion of the court that final process in 1825 from the United States district court was not regulated by our State statutes, but by the district court under the act of congress of 1793.

It seems clear that, although the statute of 1825 (R. C. 1825, p. 370, § 21) requires a sheriff's deed to be acknowledged before the circuit court of the county in which the estate therein conveyed is situate, the acknowledgment of the marshal's deed must be by analogy, acknowledged before the district court of which he was an officer, and to which he must make his return on the execution ; and as the acknowledgment of a sheriff's deed did not require the court or clerk to certify that the sheriff was personally known to be the sheriff, so the certificate of the court, that the marshal was personally known, was unnecessary, as the court must be presumed officially to know its own officer. (Laughlin vs. Stone, 2 Mo. 43.) The 16th section of our statute (R. C. 1825, p. 368) requires the sheriff to expose land levied on to sale at the court house door of the county where the land is situate, and during the term of the circuit court, but the United States marshal, being ordered to levy on land within the district, sold the same in the county where the district court was held, and at the door of the court house where such court was held, during the session of said court, observing, however, the other requisites named in the said section of our act. And such a sale being

sanctioned by the district court, was presumed by this court in the case of Shepley vs. Kennerly to have been in accordance with the rules and regulations of said court.

The executions in this case differed from the executions authorized by our statute against executors, heirs, etc., for the 2nd section of the act requires when such executions are issued, that the sheriff shall be directed only of the goods and chattels which were of the ancestor, intestate, testator, etc., at the time of his death, he cause to be made the debt damages and costs, and if sufficient goods and chattels cannot be found in his county, then that of the lands and tenements which were of the ancestor, etc. he cause to be made the debt, damages, etc. The executions in this case were directed to be levied on the goods and chattels, lands and tenements generally.

The deed in this case contains all the recitals required by our statute, (R. C. 1825, § 20,) the "execution, advertisement, purchase and consideration." Under the act of 1825 the deed was not required to recite the judgment.

The 14th section of the act concerning conveyances (R. C. 1825, p. 221) declares that "all grants, bargains, sales, leases, releases, mortgages, defeasances, covenants, conveyances, bonds, contracts, agreements of or concerning any lands, tenements or hereditaments, or whereby the same be affected in law or equity shall be recorded, together with the certificate of proof or acknowledgment in the office of the recorder of the county in which the lands, tenements or hereditaments thereby conveyed or to be conveyed or affected lie, and from the time of filing the same with the recorder for record, shall impart full and perfect notice to all persons of the contents thereof, and all subsequent purchasers and mortgagees shall be deemed and held in law and equity to purchase with notice ; but no such deed or other instrument of writing as aforesaid shall be valid or binding, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder as aforesaid."

As the marshal's deed was recorded in Ray county in 1828, there could be no question that the subsequent conveyances from the heirs of Stokes were received by the grantees with notice, if

our statute in force in 1828 authorized such a deed to be recorded.

The 14th section above quoted authorizes all written instruments affecting land, which are legally acknowledged or proved, to be recorded, together with the certificate of proof or acknowledgment.

The validity of sales by the U. S. Marshal in 1825, of land in Boone County, by advertisement and sale at the court house in St. Louis, seems to be conceded in the case of Keene vs. Barnes. The statement of that case does not show what proof was offered, whether an original deed or a copy from the record. The decision, therefore, seems to have no bearing on the present case, except to show that sales by the marshal, at the court house door in St. Louis, of land in Boone county, were valid, or at least their validity would be recognized in the courts of this State.

The only question seeming to present any difficulty in the present case is the variance of the executions, under which the marshal made these sales and which are recited in and made a part of the deed, from the form which our statutes in 1825 required. The State law then required such executions first to be made out of the goods and chattels of the deceased, in the hands of his executor, administrator, etc., and that lands and tenements should only be levied on, if sufficient goods and chattels could not be found. The executions in question were directed generally against both the goods and chattels and the lands and tenements.

The general principle is, that an officer is presumed to have done his duty until the contrary appears, and though the executions in this case authorized the officer to levy on lands and tenements as well as goods and chattels, without specifying that the former could only be levied on and sold in the event that no sufficient goods and chattels could be found, yet the executions being general against both classes of property, and one class only taken, it is to be presumed that the officer acted in accordance with law, and first ascertained that there were no sufficient goods and chattels on which to levy. The executions were no doubt, in this respect, objectionable, irregular and might upon the proper suggestions, have been quashed, but having been executed upon prop-

erty clearly subject to the levy, in a contingency, we are hardly authorized to declare them void and insufficient to form any basis of title after the lapse of fifty years.

The judgment is reversed and the case remanded. The other judges concur, except Judge Wagner absent.